THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARK MCDONALD, | CASE NO. C20-1189-JCC |
| Plaintiff, | ORDER |
| v. | |
| MOLINA HEALTHCARE OF WASHINGTON, INC., | |
| Defendant. | |

This matter comes before the Court on the motion of Defendant Molina Healthcare of Washington, Inc. ("MHW") for summary judgment (Dkt. No. 29). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion for the reasons explained below.

I.   BACKGROUND

   A.   Timeline of MHW's Disciplinary Actions

Plaintiff brings suit against his former employer, MHW, for claims of disability discrimination, failure to accommodate, and retaliation. (*See* Dkt. No. 26.) In March 2016, Plaintiff began working as a care review clinician in MHW's Vancouver, Washington location. (Dkt. No. 29 at 5.) Care review clinicians primarily cold-call MHW members to discuss their healthcare needs and facilitate provider referrals. (Dkt. No. 31 at 1–2.)

According to Plaintiff, his supervisor Alicia Molina was "out to get him," even suggesting he should quit, which he felt was "very much disability related." (Dkt. No. 30-1 at 28, 33–34.) Ms. Molina denies these allegations. (Dkt. No. 31 at 2.)

A few weeks into his employment, Ms. Molina met with Plaintiff to create a coaching plan. (*Id.*) Plaintiff indicated he felt overwhelmed, and the two met again. (Dkt. No. 30 at 6.) After the meeting, Ms. Molina e-mailed MHW Human Resources stating her concern "about his attitude and accusations." (Dkt. No. 31-4 at 2.) She wrote that Plaintiff said he didn't trust his supervisors and had read printed portions of her e-mails aloud to her in a sarcastic tone. (*Id.*)

Plaintiff told MHW Associate Vice President of Healthcare Services Kathie Olson that working with his supervisors had "turned into an absolute nightmare" and that he was concerned his position required "a computer whiz kid." (Dkt. No. 32-2 at 3.) MHW created a learning plan for Plaintiff, which he completed. (Dkt. Nos. 29 at 8, 30-1 at 44–45.) Plaintiff's behavioral issues persisted, however. (Dkt. No. 31 at 2.) He sometimes called Ms. Molina "Mr. Man," which he says was "not meant to be derogatory." (Dkt. No. 30-1 at 47.) At a team lunch, he "referred to [his] role as the coach of the ladies['] leg wrestling club," resulting in a meeting with supervisors. (*Id.* at 48, Dkt. No. 31-7 at 3.) Plaintiff acknowledges making the comment but maintains other employees "routinely talked about sexual topics." (Dkt. No. 38 at 6.)

At an October 2016 meeting, Plaintiff expressed concern that coworkers were not knocking when entering his cubicle. (Dkt. No. 29 at 8.) Plaintiff told his coworkers that "not knocking is a good way to get an arm broken in this world." (Dkt. No. 30-1 at 22–23.) MHW placed Plaintiff on two weeks of paid leave while it investigated his conduct. During the investigation, several team members reported that the comment felt threatening and did not seem like a joke. (Dkt. Nos. 31-7 at 2, 32-5 at 13.) Plaintiff says they misinterpreted his remark. (*See* Dkt. No. 31-4 at 2.)

Following the investigation, MHW issued a "Final Warning" addressing Plaintiff's comments described above as well as other allegations from coworkers. (Dkt. No. 32-5 at 13.) The day Plaintiff returned to work, his coworkers complained about his behavior and another meeting

ORDER
C20-1189-JCC
PAGE - 2

was held. (Dkt. No. 31 at 3.) Plaintiff continued to refer to Ms. Molina as "Mr. Man," violating the instructions in his Final Warning. (31-8 at 3.) On November 29, 2016, Plaintiff sent Human Resources an "Appeal of Final Warning," suggesting discrimination played a role in his discipline. (Dkt. No. 30-4 at 6–7.) He admitted discussing his celibacy in a meeting and that he had called a coworker a "tigress" and a "fireball," remarks he asserted were not sexual. (*Id.* at 10–11.)

On July 21, 2017, Plaintiff received his quarterly review. (Dkt. No. 31-9 at 2.) In his feedback, he wrote that he had filed an Equal Employment Opportunities Commission ("EEOC") charge and that his "[l]ong term goal is just to survive in a female dominated office environment." (*Id.* at 3.) Ms. Olson requested to meet with Plaintiff to discuss his feedback, but he refused, and "Second Final Warning" was issued, dated August 4, 2017. (Dkt. Nos. 29 at 13, 31-9 at 2, 32-3 at 2.)

On August 24, 2017, MHW gave Plaintiff a written warning for suggesting unauthorized medical treatments. (Dkt. No. 31-11 at 2.) The next day, Ms. Olson had a phone meeting with Plaintiff and other supervisors to discuss allegations that he was questioning coworkers about the medical advice incident. (Dkt. Nos. 32-4 at 3.) Ms. Olson stated while concluding the meeting, she heard Plaintiff tell a supervisor "get out of my space." (*Id.*) Plaintiff asserts the employee was trying to physically remove him from the room. (Dkt. No. 38 at 7.) Plaintiff was then terminated. (*Id.*)

B.    **Plaintiff's Accommodations and EEOC Complaint**

Plaintiff has a hearing impairment. (Dkt. No. 26 at 2.) In March 2017, Plaintiff filed an EEOC charge against MHW alleging disability discrimination, failure to provide a reasonable accommodation, and retaliation. (Dkt. No. 38 at 7.) Plaintiff's EEOC charge alleged that in September 2016 he had requested a Cap-Tel TTY ("TTY") machine to translate phone calls and submitted his written request for accommodations that November.[1] (Dkt. Nos. 30-1 at 33, 38 at 2, 11) Plaintiff alleges a TTY machine was delivered, but remained uninstalled for the final six

---

[1] Elsewhere, Plaintiff states that he told MHW in his interview that he required an TTY machine. (Dkt. Nos. 30-1 at 33, 38 at 2, 11), and at other times that he told MHW in his interview he required accommodations but didn't get into specific types of accommodations. (Dkt. No. 30-1 at 36.)

months of his employment. (Dkt. No. 39 at 8.) Plaintiff also claims he was promised a private office to reduce background noise. (Dkt. No. 30-1 at 33, 38 at 2.) He worked in a cubicle for the duration of his employment. (Dkt. Nos. 29 at 13.) According to Plaintiff, as he became more vocal about his need for accommodations, he began to receive "unwarranted reprimands" and comments he made "were grossly taken out of context." (Dkt. No. 38 at 5.) In August 2017, the EEOC mailed Plaintiff a Dismissal and Notice of Rights. (Dkt. No. 39-8 at 2.)

## II. DISCUSSION

### A. Legal Standard

The Court will grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In making such a determination, the Court must view the facts and justifiable inferences to be drawn from them in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party must present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248–49. "[W]hen the nonmoving party relies only on its own declarations to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact." *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

### B. Analysis

Plaintiff has not provided direct proof of discrimination or retaliation. Because Plaintiff aims to show discrimination and retaliation through indirect proof, the *McDonnell Douglas* burden-shifting framework applies. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, (1973). Under *McDonnell Douglas*, an employee challenging an adverse employment action has the initial

burden of establishing a prima facie case of discrimination (or retaliation). *Curley v. City of N. Las Vegas*, 772 F.3d 629, 632 (9th Cir. 2014). Once a plaintiff has established a prima facie case, the burden shifts to the defendant to show a legitimate, nondiscriminatory (or nonretaliatory) reason for the challenged actions. *Id.* If the defendant is able to do so, the burden returns to the plaintiff, who must show that the proffered nondiscriminatory reason is pretextual. *Id.*

### 1. Disability Discrimination and Retaliation

The Americans with Disabilities Act ("ADA") prohibits employment discrimination based on physical disabilities. 42 U.S.C. § 12112. To establish a prima facie claim of disability discrimination, Plaintiff prove that (1) he is a disabled person within the meaning of the ADA (2) he is a qualified individual with a disability, and (3) he suffered an adverse employment action because of his disability." *Hutton v. Elf Atochem N. Am., Inc.*, 273 F.3d 884, 891 (9th Cir. 2001).

Similarly, to make out a prima facie case for retaliation, Plaintiff must establish that (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there was a causal link between the protected activity and the adverse employment action. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064–65 (9th Cir. 2002).

Here, Plaintiff asserts that his termination was (1) in retaliation for making claims against MHW to the EEOC and for opposing employment practices prohibited under the ADA; or in the alternative, (2) due to disability discrimination. (Dkt. Nos. 26 at 6–8.) He further argues MHW discriminated against him "in the form of unsubstantiated or unfounded reprimands." (*Id.* at 6.)

The parties do not dispute that Plaintiff was both disabled and qualified for the care review clinician job. Also, filing an EEOC complaint is clearly a protected activity, and "[i]t is beyond challenge that a person's termination is considered an adverse employment action." *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1089 (9th Cir. 2001).

The main issue is thus whether Plaintiff demonstrates a causal nexus between his termination and either his disability or his protected conduct. Causation for An ADA discrimination claim under 42 U.S.C. § 12112 requires proof that the adverse employment action

would not have occurred but for the disability. *Murray v. Mayo Clinic*, 934 F.3d 1101, 1105 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2720 (2020) (overruling the previous "motivating factor" causation standard). Similarly, for his retaliation claim, Plaintiff must show that "engaging in the protected activity was one of the reasons for his firing and that *but for* such activity he would not have been fired." *Villiarimo*, 281 F.3d at 1064 (emphasis added).

The Court need not address causation, however; because even if Plaintiff could make a prima facie showing of causation, the Court nonetheless finds that MHW has articulated a legitimate, non-discriminatory, non-retaliatory reason for taking disciplinary action against Plaintiff and terminating his employment.

MHW provided ample evidence of Plaintiff's violations of MHW policy. Plaintiff does not dispute making the statements that led to the two "Final Warning" notices and, ultimately, his termination. (*See, e.g.*, Dkt. Nos. 30-4 at 10–11, 22, 38 at 6.) Instead, he disputes how others characterize or interpret his statements. (*See, e.g.*, Dkt. No. 30-1 at 22.) He claims other MHW employees were not reprimanded for similar remarks and job performance issues, but he is unable to identify these employees and the only evidence that similarly situated coworkers were treated differently are Plaintiff's own conclusory, self-serving testimony and pleadings. (Dkt. Nos. 26 at 6, 39 at 3, 5.) Such evidence is not sufficient to withstand summary judgment. *See Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003); *Villiarimo*, 281 F.3d at 1061.

Further, it is uncontroverted that MHW commenced disciplinary actions before Plaintiff filed with the EEOC or formally requested accommodation. (*See* Dkt. Nos. 29 at 8, 30-1 at 44–45, 31-7 at 3, 38 at 7, 39-4 at 1–3.) Plaintiff's unprofessional conduct provided clear grounds for termination. Still, rather than fire Plaintiff after he violated the terms of the first "Final Notice," MHW attempted to work with him to resolve his behavioral issues. (*See* Dkt. No. No. 31-9 at 2.)

MHW's proffered reasons for taking disciplinary actions and ultimately terminating Plaintiff's employment were not pretextual. Accordingly, MHW is entitled to summary judgment on Plaintiff's disability discrimination and retaliation claims.

### 2.  Failure to Accommodate

To make out a prima facie case for failure to accommodate, Plaintiff must show that (1) he is disabled; (2) he is qualified for the job in question and capable of performing it with reasonable accommodation; (3) the employer had notice of his disability; and (4) the employer failed to reasonably accommodate his disability. *See Samper v. Providence St. Vincent Med. Cntr.*, 675 F.3d 1233, 1237 (9th Cir. 2012); *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088–89 (9th Cir. 2002). The employer need only provide enough accommodation to enable the employee to perform the essential functions of his job on par with nondisabled employees, and the plaintiff must show that he required such an accommodation. *McDaniels v. Grp. Health Co-op.*, 57 F. Supp. 3d 1300, 1314 (W.D. Wash. 2014).

Here, MHW has offered substantial evidence of its attempts to accommodate Plaintiff's hearing impairment. In his written accommodation request, Plaintiff's physician specified only that MHW "please provide a quiet workplace" and "a TTY[] machine." (Dkt. No. 39-4 at 3.) As the Vancouver office had no private employee offices, MHW provided Plaintiff with a window cubicle "against a wall in the quietest corner of the office." (Dkt. Nos. 30-6 at 2, 31 at 3, 32 at 2.) It documented many steps taken to procure and set up a TTY machine from the time it received the request. MHW worked with Plaintiff to select and order a machine. (Dkt. No. 31-1 at 2–3.) The setup involved special software that needed company approval, as well as hiring a third party to "translate" the spoken word into text, which further required authorization of a professional agreement through several departments. (*Id.*) During this time, Ms. Molina continued to update supervisors and Plaintiff on the progress procuring the machine. (*See, e.g.*, Dkt. Nos. 30-1 at 49, 39-6 at 2.) In the interim, MHW provided Plaintiff with a special amplifying headset. (Dkt. Nos. 30-1 at 49, 31-2 at 2, 39-5 at 2.)

Plaintiff has not shown that these accommodations were insufficient for him to perform the essential functions of his job. (*See generally* Dkt. No. 26.) The record makes it clear that Plaintiff's termination was based on his behavioral issues, not his job performance. His only

performance-related discipline involved familiarity with the electronic medical records system and providing inaccurate coverage and treatment information. (Dkt. Nos. 31-11 at 2, 32-1 at 2–5.) In fact, Plaintiff claims that while it was difficult to keep up with his workload, he was actually *more* productive than his peers and given additional responsibilities by MHW. (Dkt. No. 30-1 at 29.) When deposed, Plaintiff was asked whether he could do his job without the TTY machine. (*Id.* at 50.) He answered,

> Not in the capacity that I was satisfied with. . . . For instance, if you get a client that calls who's on a—a cellphone, or they're on long distance, or somebody who has a strong accent or a soft voice, it's just not possible for me to hear everything. And frankly, I'm not sure if somebody even with normal hearing would necessarily be able to hear all that.

(*Id.*) MHW, however, never indicated that his ability to conduct telephone triage fell below a capacity *it* was satisfied with. Plaintiff has made no showing that he required a private office or TTY machine to perform the essential functions of his job on equal terms with nondisabled employees. Nevertheless, MHW put considerable effort into meeting his requests.

Plaintiff has not created a genuine issue of material fact regarding whether MHW failed to reasonably accommodate his disabilities. Summary judgment for MHW is warranted on this claim.

## III.   CONCLUSION

For the reasons described above, MHW's motion for summary judgment (Dkt. No. 29) is GRANTED. Plaintiff's amended complaint (Dkt. No. 26) is DISMISSED with prejudice.

DATED this 6th day of January 2022.

John C. Coughenour
UNITED STATES DISTRICT JUDGE